CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 1 3 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 5:17cr00007 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| BEAM BROS. TRUCKING, INC., et al. ) | United States District Judge |
| ) | |

## MEMORANDUM OPINION

On March 16, 2017, the grand jury handed down a 126-count indictment against defendants Beam Bros. Trucking, Inc., Beam Bros. Holding Corporation, LLC (collectively, "Beam Bros."), Gerald C. Beam, Garland W. Beam, Shaun C. Beam, and Nickolas Kozel. A notice of forfeiture advises that, upon conviction, the government will seek forfeiture of certain property pursuant to both the civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as well as the criminal forfeiture statute, 18 U.S.C. § 982(a)(1). The notice further provides that the property to be forfeited includes, but is not limited to, a $40,000,000 money judgment.

According to defendants, this notice of forfeiture has jeopardized the continued financing of Beam Bros.' operations. The majority of Beam Bros.' business involves the delivery of U.S. Mail up and down the east coast and to points west of the Mississippi. According to defendants, continued financing is essential to the timely and consistent delivery of mail pursuant to Beam Bros.' existing postal contracts.

At the time defendants brought this issue to the court's attention on April 6, 2017, defendants' concern centered on its revolving lines of credit extended through Branch Banking & Trust (BB&T) and, by extension, its fueling credit through Pilot Travel Centers.

Defendants sought certain assurances from the government as to its intentions regarding forfeiture, in an effort to satisfy BB&T's concerns about continuing to fund Beam Bros.' post-indictment operations. In that endeavor, defendants requested an emergency hearing, which was held via conference call on April 6, 2017. At that hearing, the government indicated it could not involve itself in Beam Bros.' financial relationship with a third-party lender, and it declined to provide any assurances as to its forfeiture intentions.

Defendants then turned to the court for assistance. On the evening of April 6, 2017, defendants filed an emergency motion seeking a decree nisi (ECF No. 58), which is currently pending before the court. In this motion, defendants seek entry of an order pursuant to the All Writs Act, 28 U.S.C. § 1651, providing:

1. Any funds received and paid back to BB&T, or other funding source, for maintaining lawful operations of Beam Bros. post-indictment, are not subject to forfeiture or restraint in this case;

2. That BB&T or other third party funding source that received or receives post-indictment monetary repayments from Beam Bros. is not subject to any claw-back or disgorgement of those payments as substitute assets.

Subsequent briefing reveals that in order to secure funding to pay fuel costs and carry Beam Bros. to the next round of contract payments by the U.S. Postal Service, defendants were forced to enter into a forbearance agreement with BB&T that requires the company to file Chapter 11 bankruptcy no later than Friday, April 14, 2017. Defendants acknowledge that "[a]t this point, it is doubtful that an order from this Court will turn BB&T Bank from its current path." Defs.' Reply Br., ECF No. 60, at 3. However, they represent they have

another potential source of funding on the horizon, and a court order is still necessary to preserve that option and avoid bankruptcy. The parties appeared for a second hearing via conference call on April 10, 2017, at which defendants stated that court intervention is "absolutely necessary" to prevent the complete destruction of the company. The government opposes entry of any decree concerning forfeiture at this preliminary stage of the criminal proceedings.

The court appreciates defendants' plight. There has been no conviction in this case, and the court is mindful of the burden these allegations have placed on Beam Bros., notwithstanding the presumption of innocence. Nevertheless, the court cannot issue an advisory opinion to a third-party lender on the issue of forfeiture. As such, defendants' requested relief must be **DENIED**.

## I.

In seeking a decree nisi, defendants invoke the All Writs Act, 28 U.S.C. § 1651, which provides:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651. Black's Law Dictionary defines a "rule nisi" or "decree nisi" as: "A court's decree that will become absolute unless the adversely affected party shows the court, within a specified time, why it should be set aside." Black's Law Dictionary (10th ed. 2014).

While § 1651 specifically references writs issued in aid of jurisdiction, the Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977). Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." Id. at 172–73 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 273 (1942)).

That said, "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Penn. Bureau of Correction v. U.S. Marshals Serv., 474 U.S. 34, 42 (1985). The Act "empowers federal courts to fashion extraordinary remedies when the need arises;" however, "it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Id.

## II.

The court cannot issue a decree nisi and grant defendants the relief they request for the following reasons.

4

**A.**

First, any determination concerning forfeiture is premature. The government has not moved for pretrial restraint of assets, and there has been no conviction in this case. Rule 32.2 of the Federal Rules of Criminal Procedure provides that:

> As soon as practical *after* a verdict or finding of guilty, or *after* a plea of guilty or nolo contendre is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Fed. R. Civ. P. 32.2(b)(1)(A) (emphasis added).

Defendants were indicted less than a month ago. The court's knowledge of the facts of this case largely is limited to what is alleged in the indictment. The court's knowledge of the basis for the $40,000,000 money judgment[1] is limited to what was represented by the government's counsel in connection with the instant motion. The court has no information as to the existence or value of Beam Bros.' assets that might be used to satisfy any money judgment, should the government obtain a conviction. There is simply no basis upon which

---

[1] The notice of forfeiture in the indictment is made pursuant to Federal Rule of Criminal Procedure 32.2(a), which requires "notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Although the government chose to quantify the money judgment it intends to seek upon conviction, the federal rules do not require the government to specify the amount of any forfeiture money judgment it intends to seek, nor must the government identify property it claims is subject to forfeiture. The government need only provide notice to defendants that it will seek forfeiture. Fed. R. Crim. P. 32.2(a).

5

the court can opine at this stage of the proceedings as to the forfeitability of certain property if the government meets its burden of proof at the end of the day.[2]

**B.**

In any event, there is a complex statutory scheme governing forfeiture. This case alleges violations of law implicating both the civil and criminal forfeiture statutes pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c). Under paragraph 72(a) of the notice of forfeiture, the government seeks civil forfeiture pursuant to § 981(a)(1)(C) and § 2461(c) of any property "which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections, 1343, and/or 1349. . . ." Paragraph 72(b) seeks criminal forfeiture pursuant to § 982(a)(1) of any property "involved in a violation of Title 18, United States Code, Section, 1956 and 1957, or any property traceable to such property. . . ."

Both the civil and criminal forfeiture statutes invoke § 853 of Title 21. This statute mandates forfeiture of substitute assets "'when the tainted property has been placed beyond the reach of a forfeiture.'" United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006) (quoting United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003)). Indeed, § 853(p) requires the court to order forfeiture of substitute property if, as a result of any act or omission of the defendant, the property subject to forfeiture:

> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third
> party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or

---

[2] The forfeitability of certain property turns on whether the government has established the requisite nexus between the property and the offense. Fed. R. Crim. P. 32.2(b)(1)(A). That determination will be made based on the evidence of record only after a verdict or finding of guilt. Fed. R. Crim. P. 32.2(b)(1)(B).

6

>(E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)-(2). Substitute property is "any other property of the defendant, up to the value of any property" that would otherwise be subject to forfeiture. Id. § 853(p)(2).

It is this statutory scheme, along with the procedures set forth in Federal Rule of Criminal Procedure 32.2, that ultimately will govern any future forfeiture proceedings in this case. See Penn Bureau of Correction, 474 U.S. at 42 ("Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."); see, e.g., Bryan v. Bellsouth Commc'ns, Inc., 492 F.3d 231, 236 (4th Cir. 2007) (finding use of the All Writs Act is constrained by the Anti-Injunction Act, 28 U.S.C. § 2283).

Defendants posit that because the forfeiture statutes do not address the precise situation facing Beam Bros., the court may call on the All Writs Act to provide the requested relief. Defendants argue this scenario is "exactly what has prompted the government in the past to rely on the All Writs Act for forfeiture relief." Defs.' Reply Br., ECF No. 60, at 4. The cases cited by defendants for this proposition, however, all involve efforts to restrain a defendant's assets *after* a finding of guilt and in anticipation of sentencing. They are therefore distinguishable.

For example, in United States v. Gilbert, No. 92 CR 1001 (JSM), 1993 WL 427415, at *1 (S.D.N.Y. Oct. 15, 1993), the court issued a restraining order just prior to sentencing that would reach all of defendant's assets, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651. Although the exact amount of the loss was disputed, there was "a real question as to whether or not [defendant] currently has sufficient liquid assets to satisfy any

7

judgment of restitution ordered by the Court." Id. The court held that § 1651 granted it authority to "enjoin and bind non-parties to an action when needed to preserve the Court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." Id. (quoting In re Baldwin-United Corp., 770 F.2d 328 (2d Cir. 1985)). The court noted that, within a week, it would be sentencing defendant and ordering "substantial restitution." Id. Under the circumstances, it seemed "totally appropriate to restrain [defendant] from dissipating his assets" prior to entry of the restitution order. Id. Of particular note, the court contrasted the procedural posture of Gilbert from a case in which the court "has yet to hear evidence or in which a verdict has not been reached." Id.

In United States v. Abdelhadi, 327 F. Supp. 2d 587 (S.D.N.Y. 2004), defendant pled guilty to wire fraud and naturalization fraud, and the court accepted his plea. Defendant later unsuccessfully attempted to withdraw his plea and absconded prior to sentencing. Defendant was sentenced in absentia. At the government's request, the court entered an order pursuant to the All Writs Act, enjoining and restraining defendant from transferring or diminishing his assets subject to restitution, and authorizing the government to file a lis pendens on his real property. In finding the order was properly issued, the court held that it was intended to effectuate the court's previously-issued sentencing and restitution orders. While other remedies were available to the government, "none reasonably ensure[d] the effectiveness of the Court's restitution order by ensuring that defendant's assets are not wasted or secreted." Id. at 600.

Likewise, in United States v. Numisgroup International Corp., 169 F. Supp. 2d 133 (E.D.N.Y. 2001), the court issued a restraining order pursuant to the All Writs Act in

8

anticipation of a restitution order to be imposed at sentencing. At the time, a jury had returned a guilty verdict and the court had held a forfeiture proceeding. Although the court had denied the government's application for forfeiture of 26,600 coins belonging to defendant, the government moved to restrain the coins until sentencing as collateral for restitution, as they were the only asset of value aside from rental property that had been pledged as part of defendant's bond conditions. The court held that forfeiture of the coins as substitute property was authorized and warranted in light of the forfeiture money judgment, and thus the restraint was lawful. Additionally, the court held it had authority to restrain the coins "[b]ecause sentencing and a substantial Order of Restitution is imminent." Id. at 138. The Numisgroup court expressly noted the "special circumstances" presented in that case. Id. at 139.

Here, in contrast, there has been no verdict or plea of guilty. There have been no forfeiture proceedings. There is no imminent sentencing at which an order of substantial restitution is expected. There has been no request to restrain assets as there was in Gilbert, Abdelhadi and Numisgroup. Rather, what defendants seek is a prospective ruling from the court as to the parameters of any potential forfeiture by the government should there be a future conviction. Those parameters are set forth in the statutory scheme referenced above. The court need not issue an advisory opinion on the subject.

### C.

Defendants claim not to be asking for a determination as to what property is forfeitable at this early stage of the proceedings. Rather, they seek a declaration that post-indictment funds received from and paid back to any funding source are not subject to

9

forfeiture or restraint in this case. In so arguing, defendants seek to stop the clock as of the date of the indictment, arguing "[n]either the government, nor the Court, can order the defendants to forfeit any property that was derived from any conduct that occurred after" March 16, 2017, and funds received for maintaining lawful business operations after that date are not subject to claw-back. Reply Br., ECF No. 60, at 6-7.

The government's view of the world was made clear at the April 10, 2017 hearing. From its perspective, Beam Bros. is currently operating under fraudulently-obtained contracts that were entered into prior to the indictment. The indictment alleges that defendants engaged in a scheme to defraud the government, specifically the U.S. Postal Service, both in the inducement of contracts and performance of those contracts. See, e.g., Indictment, ECF No. 1, at ¶¶ 58-63. Thus, according to the government, payments made by the U.S. Postal Service to Beam Bros. post-indictment are based on fraudulently-obtained contracts. Likewise, post-indictment payments by Beam Bros. to its lending institutions are being made with proceeds from these fraudulently-obtained contracts.

Responses from defendants and the government to additional inquires posed by the court overnight have only clouded the ultimate forfeiture issue. In Counts 108-118, the indictment charges that the defendants engaged in wire fraud by transmitting certain U.S. Postal Service renewal contracts on certain dates in furtherance of the wire fraud conspiracy charged in Count 107. The court asked the parties whether the U.S Postal Service renewal contracts referenced in Counts 108-118 were still in force, in an effort to see how the parties' conflicting positions regarding the potential forfeiture of funds paid by the U.S. Postal Service to Beam Bros. post-indictment measured up against the charges actually alleged in

the indictment. In response to the court's questions, the parties responded that most of the contracts referenced in Counts 108-118 remain in effect, but that those contracts presently in force were renewed after the dates of the conduct charged in Counts 108-118. Not surprisingly, the parties disagree as to the impact of this additional information. Defendants argue that "all of the contracts relied upon by the government for the substantive wire fraud counts in the indictment expired pre-indictment, which belies their position that there is ongoing fraud under some of those same contracts post-indictment." The government attributes different meaning to these facts, stating that "[w]e agree with counsel that all of the reference[d] contracts currently in effect have been renewed after the date charged [in the] substantive wire fraud counts, but those renewals took place within the time frame of the charged conspiracy as alleged in counts 107 and 126."

Given the position taken by the government and the allegations of fraudulent inducement set forth in the indictment, the court cannot at this time draw a line in the sand as of March 16, 2017 and order that any funds received from and paid back to Beam Bros.' lending institutions post-indictment are not subject to forfeiture or restraint.[3] Those determinations will require consideration of evidence regarding the alleged wire fraud and the extent to which payments made under renewed contracts were tainted by the fraud alleged. The court simply is not in a position to make a ruling on the forfeitability of payments made by the U.S. Postal Service to Beam Bros. post-indictment based on renewed contracts entered into pre-indictment. The history of the contractual relationship between Beam Bros. and the U.S. Postal Service dates back many years, and, given the intricacies of

---

[3] The court also has concerns that commingled funds may be subject to forfeiture as substitute property. See 21 U.S.C. § 853(p)(1)(E), (2). These issues will be sorted out at an appropriate time if there is a conviction in this case.

11

the criminal forfeiture statutes, the court cannot make a definitive ruling as to the forfeitability of these monies before the first witness has been sworn in this case. Of necessity, Rule 32.2 provides that those determinations must be made after trial once the court has heard the evidence sufficient to enable it to gain a clear understanding of the facts of this case, including the alleged fraud, the specifics of the contracts at issue, and the payments in question.

### D.

Finally, the court is not privy to the nature of the financial agreements between Beam Bros. and its lending institutions—nor should it be. As such, the court is not in a position to make the assurances as to forfeiture that the government declined to provide.

It is simply not the court's role to issue an advisory opinion to Beam Bros.' third-party lenders on the statutory framework governing forfeiture in this criminal case. What's more, Beam Bros.' funding sources may be just as concerned with the allegations in the indictment as they are with the notice of forfeiture. At the end of the day, any opinion from the court may have little impact on these institutions' willingness to fund post-indictment operations.

For all of these reasons, defendants' motion will be **DENIED**.

### III.

According to defendants, Beam Bros. has literally and figuratively run out of gas. Defendants argue the destruction of this company and dissipation of its assets before they even get their day in court would be devastating for all parties involved – the government,

the defendants, Beam Bros.' employees, and the public. Given the unique circumstances presented in this case, they seek the court's intervention.

But the court cannot act a surety for potential lenders or investors that might be willing to continue funding Beam Bros.' operations post-indictment. It is simply too early in the proceedings for the court to make any determinations as to forfeiture. The statutory framework itself should guide any decision-making based on the potential impact of forfeiture should the government meet its burden and obtain a conviction in this case. The court can offer no more at this point.

While the court cannot give defendants the relief they request, certain things are clear:

1. To date, there has been no request by the government for pretrial restraint of assets.
2. The presumption of innocence is the hallmark of our system of justice, and defendants are innocent until proven guilty.
3. Defendants hotly contest the charges against them. They have exercised their right to a speedy trial, and the trial of this matter is scheduled to begin May 31, 2017.
4. If there is a conviction, the court will determine the amount of forfeiture using the applicable statutory framework and the procedures set forth in Federal Rule of Criminal Procedure 32.2.

An appropriate Order will be entered.

ENTER this 13th day of April, 2017.

/s/ Michael F. Urbanski
_____
Michael F. Urbanski
United States District Judge